**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DOUGLAS HABIG**,<br><br>　　　Plaintiff,<br><br>　vs.<br><br>**RELIANCE STANDARD LIFE INSURANCE COMPANY; INSURANCE POINT LLC,**<br><br>　　　Defendants. | Case No.: 16-CV-5462-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Habig brings this action against defendant Reliance Standard Life Insurance Company ("Reliance Insurance") and Insurance Point, L.C.C. ("Insurance Point") challenging their administration of the long-term disability income insurance policy issued to plaintiff's former employer, Alameda Health System ("Alameda"). Habig argues that Reliance Insurance improperly limited his disability income insurance benefits to 24 months of payment based on a policy clause limiting benefits for mental health disorders ("mental health policy limitation"). This case hinges on an interperation of California Insurance Code Section 10123.15 and is a case of first impression.

Habig and Reliance Insurance filed cross-motions for summary judgment on the enforceability of the referenced mental health policy limitation. On February 21, 2017, Habig filed a motion for partial summary judgment arguing California Insurance Code Section 10123.15 prohibits Reliance Insurance from applying the mental health policy limitation to Habig's bipolar disorder disability. (Dkt. No. 38.) Reliance Insurance filed its opposition and cross-motion for summary judgment seeking a contrary ruling, namely that Section 10123.15 does not apply to (i) disability income policies in California or (ii) the disability income insurance policy at issue in this case, and, (iii) in any event, because Rhode Island law applies to this lawsuit under a choice of law

analysis, the claim fails. (Dkt. No. 44.) Reliance Insurance also requests that the Court take judicial notice of several official legislative history reports.[1]

Having carefully considered the pleadings and fully-briefed motions, the hearing held on April 18, 2017, and for the reasons set forth below, the Court finds that the plain language of Section 10123.15 does not prohibit the use of a mental health policy limitation in a disability income policy. Accordingly, the Court **DENIES** plaintiff's motion for partial summary judgment. Defendant's motion for partial summary judgment is **GRANTED**.

## I. RELEVANT BACKGROUND

On January 1, 2013, Alameda began participating in a disability income insurance policy (the "Master Policy") issued by Reliance Insurance, through an entity called the RSL Group and Blanket Trust ("RSL Group"). (Dkt. No. 12, First Amended Complaint ("FAC") at ¶¶ 7-9.) Under the Master Policy, Alameda employees that became disabled were eligible for a monthly benefit, up to $10,000, subject to various restrictions and limitations, including the mental health policy limitation, which limited payments for disabilities based on certain mental disorders to 24 months of payment. (*Id*. at ¶¶ 10, 14.) Pursuant to the trust agreement between Reliance Insurance, RSL Group, and Alameda, the "Policy is delivered in Rhode Island and is governed by its laws." (Dkt. No. 38-2, Declaration of James P. Keenley ("Keenley Decl."), Ex. 1 at RSLI 000001.) Alameda agreed to be "bound by all terms and conditions of the Trust Agreement." (*Id.* at RSLI 000005.)

Plaintiff Habig worked as General Counsel for Alameda and, through his employment, was covered under the Master Policy. (FAC at ¶¶ 3, 9.) After becoming disabled as a result of severe bipolar disorder, he filed a claim for disability income benefits. (*Id*. at ¶ 11.) Reliance Insurance approved the claim subject to the mental health policy limitation, and notified Habig that his benefits would terminate after 24 months. (*Id*. at ¶¶ 12-15.) In response, Habig, through counsel, sent a letter to Reliance Insurance challenging the benefits determination. (*Id*. at ¶ 29.) The letter

---

[1] Defendant requests that the Court take judicial notice of the legislative history from California Senate Bill 454. This Bill was introduced in 2001, and specifically applies to subsequently enacted legislation. It does not apply to Insurance Code Section 10123.15, which was enacted in 1989. Senate Bill 454 is not relevant to this motion and cross-motion, and defendant's request for judicial notice is therefore **DENIED**.

2

stated that Habig was never made aware of the mental health policy limitation, and that California law prohibited Reliance Insurance from treating mental health disorders differently than other brain disorders. (*Id.*)

Habig filed the FAC on November 30, 2016. He alleges claims against Reliance Insurance for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unfair business practices pursuant to California Business and Professions Code. Specifically, he alleges that California Insurance Code Section 10125.15 prohibits Reliance Insurance from applying the mental health policy limitation to his benefits claim. (*Id.* at ¶ 41.) Habig also seeks to hold Reliance Insurance vicariously liable for the allegedly negligent misrepresentation made by Insurance Point, Alameda's broker. (*Id.* at ¶¶ 44-55.)

## II. LEGAL FRAMEWORK

### A. Choice-of-Law Provisions

In diversity cases, federal courts apply the conflict of law principles of the forum state. *S.A. Empresa v. Boeing Co.,* 641 F.2d 746, 749 (9th Cir. 1981). Under California law, a contractual choice-of-law provision is enforceable unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice," or the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 465 (1992) (quoting Restatement (Second) of Conflict of Laws § 187 (1971)). California favors enforcement of choice of law provisions. "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in the Restatement section 187 [Rest. 2d Conf. of Laws, § 187], which reflects a strong policy favoring enforcement of such provisions." *Hambrecht & Quist Venture Partners, et al. v. American Medical International, Inc.*, 38 Cal. App. 4th 1532, 1544 (1995).

### B. Summary Judgment

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

### III. DISCUSSION

#### A. Choice-of-Law Analysis

The Court begins with the choice of law analysis. A party seeking to enforce a choice-of-law provision bears the burden of proving that the chosen state has a substantial relationship to the parties or the transaction, or that there is some other reasonable basis for the choice. *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 917 (2001). If the party seeking to enforce the provision meets its burden, the burden then shifts to the other side to establish "that the chosen law is contrary to a fundamental policy of California" and that California has a greater interest in the issue at hand. *Id*.

##### 1. Contractual Provision

The Master Policy controlling plaintiff's claims explicitly provides that it is deemed to be "delivered in Rhode Island and [] governed by Rhode Island law." (Keenley Decl., Ex. 1 at RSLI 000001.) Alameda agreed to be "bound by all terms and conditions of the Trust Agreement." (Dkt. No. 44-2, Declaration of Donald P. Sullivan ("Sullivan Decl."), Ex. 1 (RSLI 000673).)

Habig submits that when Alameda first applied to Reliance Insurance for disability insurance coverage, it specifically sought a policy to be issued in the state of California. (Keenley Decl., Ex. 5). The certificate of insurance, he contends, did not contain any language stating that Rhode Island law applied to the Master Policy. (*Id*. at Exh. 6)

Plaintiff does not persuade. Regardless of whether Alameda initially sought a policy issued in California, the terms of the final agreement control. Having found that the Master Policy

4

includes a choice-of-law provision for Rhode Island law to govern, the Court next turns to whether it is enforceable under California law.

### 2. Relationship to the Parties or the Transaction

The first prong of the analysis requires that defendant show Rhode Island has a substantial relationship to the parties or the transaction in this case. Here, the Master Policy was issued through RSL Group, which was created in Rhode Island and has been domiciled there for thirty years. (Keenley Decl, Ex. 1 at RSLI 000001.) Its current trustee, Bank of Newport, is located in Rhode Island. (Dkt. No. 44-3, Declaration of Lynn Mack ("Mack Decl.") at ¶ 5.) Further, RSL Group maintains its place of business in Rhode Island. (*Id.* at ¶ 8.) By contrast, Habig argues that Reliance Insurance itself is incorporated in Illinois and its primary offices are in Philadelphia. (Keenley Decl., Ex. 1 at RSLI 000001.) Further, the Master Policy covers California employees, and Habig resided in California at all relevant times.

The Court finds the first prong is satisfied. Reliance Insurance is not required to show that Rhode Island is the *only* state with a substantial relationship to the parties or the transaction. Rather, it must simply show that Rhode Island has *a* substantial relationship to the parties or the transaction. Reliance Insurance has made a showing that (1) RSL Group is domiciled in Rhode Island, (2) its current trustee resides there, and (3) it maintains its place of business in Rhode Island. This is sufficient.

### 3. Conflict with Fundamental Public Policy

The next prong in the analysis requires the Court to determine whether applying the choice-of-law provision is contrary to a fundamental California public policy. Here, the parties agree that Rhode Island would not prohibit the mental health policy limitation. The question is whether California law would prohibit it, and if so, whether the issue creates a conflict with a fundamental policy. Thus, the Court analyzes the scope of Section 10123.15 and whether it prohibits the limitation at issue. Section 10123.15 reads:

> Every group policy of disability insurance which covers hospital, medical, and surgical expenses on a group basis, and which offers coverage for disorders of the brain shall also offer coverage in the same manner for the treatment of the following biologically based severe mental disorders: schizophrenia, schizo-

5

> affective disorder, bipolar disorders and delusional depressions, and pervasive developmental disorder. Coverage for these mental disorders shall be subject to the same terms and conditions applied to the treatment of other disorders of the brain; however, an insurer may reserve the right to confirm diagnoses and to review the appropriateness of specific treatment plans as necessary to ensure that coverage under this section is provided for only those diagnostic and treatment services which are medically necessary.

To conduct its analysis, the Court dissects the plain language of the statute. First, the statute applies to:

> Every group policy of disability insurance which covers hospital, medical, and surgical expenses on a group basis, and which offers coverage for disorders of the brain. . . .

Habig reads Section 10123.15 to apply to every disability insurance policy "which [either] covers hospital, medical and surgical expenses on a group basis" *or* "which offers coverage for disorders of the brain. . . ." According to plaintiff, so long as either condition is satisfied, the statute applies.

Although the duplicate use of the word "which" creates some doubt as to whether the initial clause, "covers hospital, medical and surgical expenses," and the subsequent clause, "offers coverage for disorders of the brain", are conjunctive or disjunctive, the former is more likely. Had the legislature intended Section 10123.15 to apply to every group policy that covers *either* "hospital, medical, and surgical expenses" *or* "offers coverage for disorders of the brain," it could easily have done so by using the words "either. . .or" instead of "and." Thus, the Court finds that the language of the statute requires a conjunctive reading.

This construction is supported by the balance of the statute which is focused on treatment, not disability income. First, the statute indicates that coverage for specified mental disorders "shall be subject to the same terms and conditions applied to the *treatment* of other disorders of the brain." Cal. Ins. Code. § 10123.15. (Emphasis supplied.) Plainly, this language does not apply to disability income insurance policies because such policies do not cover *treatment* at all; they provide income replacement. Second, the statute states that an insurer may "confirm diagnoses" and review "treatment plans" to ensure that "coverage is provided for only those diagnostic and treatment services which are medically necessary." Again, the language focuses on treatment.

6

Such language is irrelevant in the context of disability income insurance where diagnoses or treatment plans or services are not at issue. Third, the statute indicates that Section 10123.15 does not "affect the scope of licensure of any health care professional nor impair rights to reimbursement of guaranteed health care providers." Disability income insurance policies cannot "affect the scope of licensure of any health care professional" because such policies do not involve health care professionals. Finally, the reference to a "right to reimbursement" is an unambiguous reference to healthcare provider reimbursement rates, which apply in the context of health insurance, not disability income insurance. Analyzing the statute as a whole, the Court finds the only logical reading does not support a claim to expand the scope beyond health insurance policies.

Habig argues that *Bosetti* compels a contrary result. The Court disagrees. There, the California Court of Appeals noted in dicta that Section 10123.15 requires "disability carriers to cover organically-based mental illnesses on the same terms as physical illnesses." *Bosetti v. U.S. Life Ins. Co. in City of New York*, 175 Cal. App. 4th 1208, 1229–31 (2009). Habig points out that the *Bosetti* court applied Section 10125.15 to a disability income insurance policy, similar to the Master Policy at issue here, in barring the defendant from limiting plaintiff's disability income benefits to two years of payment. *See Bosetti*, 175 Cal.App.4th at 1231-32. The issue facing the *Bosetti* court was not whether Section 10123.25 applies to disability income insurance policies, but whether an ambiguous policy term gave rise to the insured's reasonable expectations of coverage. *Id.* at 1233. In *Bosetti*, the court held that an ambiguous policy term, which limited benefits for disabilities "due to a mental, nervous, or emotional disorder," did not apply to the defendant's disability, which was mental but also had a physical component. *Id*. at 1226-27. The defendants relied on a prior case, *Berry*, in arguing that the policy language was not ambiguous because the "mental, nervous, or emotional disorder" clause includes mental diseases of any kind, even those with a functional component. *Id.* at 1229-30 (citing *Equitable Life Assurance Society v. Berry* 212 Cal. App. 3d 832, 835, 840 (1989)). In declining to follow *Berry*, the court noted in dicta that amendments to Section 10123.15 require disability insurance policies to provide the same coverage for bipolar disorders as for other disorders of the brain. *Bosetti*, 175 Cal.App.4th at 1231-32. However, this statement was not part of the court's holding, which rested on the ambiguity of the

disability income insurance policy at issue in that case. *Id.* at 1233. In passing, the court referenced the legislative history of Section 10123.15, including a statement from one of the sponsors indicating that the bill was intended to " "[e]stablish[ ] parity between biologically based severe mental disorders and other medically based disorders of a physical nature *for the purpose of treatment under group health insurance coverage*." (Sen. Ins., Claims and Corps. Com., report on Assem. Bill No. 1692, Aug. 23, 1989). (Emphasis supplied.) The *Bosetti* court never addressed the fact that disability income insurance policies do not cover "treatment" and are not "group health insurance." Thus, despite *Bosetti,* the Court finds the plain language of the statute does not support an interpretation which broadens the scope to disability income policies.

Accordingly, the Court finds that California law does not prohibit a mental health policy limitation in a disability income insurance plan. Based on that finding, no conflict exists prohibiting Rhode Island law from governing Habig's claims, and therefore, the contractual choice-of-law provision is enforceable under California law. Summarized more specifically, the parties expressly contracted for Rhode Island law to govern the Master Policy, Rhode Island has a substantial relationship to the parties and the transaction, and enforcing the mental health policy limitation does not conflict with a California fundamental public policy.

### B. Summary Judgment

Reliance Insurance seeks a summary judgment finding that the Master Policy LSC 97,200 is a disability income policy which includes the mental health policy limitation and that such limitation is not prohibited under Cal Insurance Code Section 10123.15. Plaintiff seeks a contrary finding.

Here, the parties do not dispute that the Master Policy controls. (Dkt. No. 47, Plaintiff's Response to Defendant's Statements of Fact, Add'l Facts 1, 2.) Nor do they dispute that the Master Policy is a disability income policy or that it contains a mental health policy limitation. (Dkt. No. 44-1, Defendant's Response to Plaintiff's Separate Statement of Undisputed Facts, Fact 5; Plaintiff's Response to Defendant's Statements of Fact, Add'l Fact 6.) At issue is the dispute over the application of Section 10123.15 to the Master Policy. For the reasons set forth above, the Court finds that Section 10123.15 does not apply to the Master Policy's mental health policy limitation.

8

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion is **DENIED** and defendant's cross motion for partial summary judgment is **GRANTED.**

This Order terminates Dkt. Nos. 38 and 44.

**IT IS SO ORDERED**.

Dated: May 10, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**